FILED
08/10/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 3, 2021

## IN RE ZOEY L.[1]

**Appeal from the Chancery Court for Hawkins County**
**No. 2018AD32          Douglas T. Jenkins, Judge**

_____

## No. E2020-01250-COA-R3-PT

_____

This is the second appeal from a termination of parental rights case. In the first appeal, we remanded the case with instructions for the trial court to make the requisite written findings of fact and conclusions of law. On remand, the trial court found that the ground of abandonment by willful failure to visit had been proven and that termination of Mother's parental rights was in the best interest of the child. In this appeal, Mother argues that the trial court failed to analyze the best interest factors and how they applied to the facts of the case. After a thorough review of the record and applicable law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Gerald T. Eidson, Rogersville, Tennessee, for the appellant, Chelsea H.

Murry C. Groseclose, III, Kingsport, Tennessee, for the appellees, Jamie and Natosha B.

Amy Kathleen Skelton, Rogersville, Tennessee, Guardian Ad Litem.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

In April 2012, Zoey L. was born to Chelsea H. ("Mother") and Michael L. ("Father").[2] When Zoey was three months old, Mother and Father entrusted Zoey in the

_____

[1] This Court has a policy of protecting the identity of children by initializing the last names of the parties.

[2] Father's parental rights have been terminated and are not at issue on appeal.

care of Jamie and Natosha B. (collectively, "Petitioners") because Mother and Father were living in their car and could not properly care for Zoey. Zoey has remained in Petitioners' care ever since.

In January 2013, Petitioners were awarded legal custody of Zoey, which Mother was amenable to. Despite the award of legal custody to Petitioners, Mother continued to enjoy liberal visitation rights with Zoey. Petitioners and Mother arranged for Mother to visit with Zoey on the weekends; however, the visits came to an end sometime in 2015, when Petitioners discovered that Mother was making methamphetamine in her apartment. Since then, visits with Mother have been few and far between.

Wanting to adopt Zoey, Petitioners filed a petition on July 23, 2018, in the Hawkins County Chancery Court seeking to terminate the parental rights of Mother and Father. The petition asserted two grounds of abandonment—failure to visit and failure to support in accordance with Tenn. Code Ann. §§ 36-1-102(1)(A)(i) and -113(g)(i). The petition also stated that termination of Mother's parental rights was in Zoey's best interest.

The petition was tried on July 7, 2019, during which Mother and Natosha testified as witnesses. At the conclusion of the trial, the court found that Mother had failed to visit Zoey during the relevant period, and Mother failed to prove her failure to visit was not willful. Based on these findings, the court concluded that Petitioners established the ground of abandonment by failure to visit in accordance with Tenn. Code Ann. §§ 36-1-102(1)(A)(i) and -113(g)(1). The trial court announced its findings from the bench, which included:

> Again, the Court has heard the proof; the mother did not visit. The child was in the same location, the same phone number, same school, the same parents or at least guardians at that time. Mother knew where they worked. Petitioner testified that she lived within walking distance of them—never did show up, knock on the door. She lived within walking distance off and on both before and after her incarceration[,] and that's very strong testimony.
>
> The Court believes that the initial burden to prove willful failure to visit has been met. And additionally, the Court would say there was an order . . . allowing visitation. So there was certainly no legal impediment to any visitation, and the Court finds by clear and convincing evidence that that amounts to a willful failure to visit.
>
> So that—the initial burden of the Petitioners, the Court finds was met, but then the Court would consider the mother's affirmative defense to overcome that by some proof of her own that her failure to visit was not willful. And the mother's testimony is not satisfactory to the Court and not really very clear to the Court exactly why she wasn't seeking and enforcing and doing a

- 2 -

whole lot more to see this little child of hers during the period of March 1, 2018[,] to July 1, 2018. And so the Court finds that she did not meet her burden of proof to overcome willfulness and for that reason the—the petition is sustained on that ground.

Finding that Petitioners proved one ground for termination, the trial court next considered whether terminating Mother's parental rights would be in Zoey's best interest. Working through each of the best interest factors from the bench, the trial court recited each enumerated factor and then stated whether that factor weighed in favor of termination or not. The trial court concluded that it was in Zoey's best interest for Mother's parental rights to be terminated; in part because Mother had no meaningful relationship with Zoey, had no safe place of her own for Zoey to stay, and had never provided financial and emotional support for Zoey.

For these and other reasons, the trial court determined that Petitioners established evidence that termination of Mother's parental rights was in Zoey's best interest. Mother subsequently appealed.

In the first appeal, this court did not reach the substantive issues because the trial court's order was not compliant with the written findings and conclusions requirements of Tenn. Code Ann. § 36-1-113(k). *In re Zoey L.*, No. E2019-01702-COA-R3-PT, 2020 WL 2950549, at *3 (Tenn. Ct. App. June 3, 2020). Because this court was unable to conduct its review, this court remanded the case for further proceedings and the entry of an order compliant with § 36-1-113(k) and Tenn. R. Civ. P. 52.01. *In re Zoey L.*, 2020 WL 2950549, at *3.

On remand, the trial court prepared written findings of fact and conclusions of law as to both the ground for termination and the best interest factors in accordance with Tenn. Code Ann. § 36-1-113(k) and Tenn. R. Civ. P. 52.01. The court incorporated those findings and conclusions into its Amended Final Judgment and Termination of Parental Rights and Order of Guardianship ("Amended Final Judgment"). This second appeal followed.

### STANDARD OF REVIEW

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). "[T]his right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the

child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016).

In an appeal, "this court is required 'to review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests.'" *In re Connor B.*, 603 S.W.3d 773, 779 (Tenn. Ct. App. 2020) (quoting *In re Carrington H.*, 483 S.W.3d at 525). In doing so, we must determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). Stated another way, we must make our own "determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

The trial court's findings of fact are reviewed de novo upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d at 523–24; *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed de novo with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). A trial court's determinations regarding witness credibility are entitled to great weight on appeal and will not be disturbed absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007).

## ISSUES

Mother raises one issue on appeal: whether the trial court erred by failing to include an analysis of the best interest factors and application of each factor to the facts of this case in the Amended Final Judgment. Our review, however, cannot be so narrowly circumscribed due to the gravity of the consequences that follow from termination proceedings. Instead, this court is required to review, *inter alia*, the trial court's findings as to each ground for termination found to apply. *See In re Carrington H.*, 483 S.W.3d at 525. The trial court concluded that Petitioners established the ground of abandonment by failure to visit in accordance with Tenn. Code Ann. §§ 36-1-102(1)(A)(i) and -113(g)(1). Thus, we shall first review the trial court's findings as to this ground.

## ANALYSIS

## I. GROUND FOR TERMINATION

Tennessee Code Annotated § 36-1-113(g)(1) provides that a court may terminate the parental rights of a parent who has abandoned the child as defined by Tenn. Code Ann. § 36-1-102:

"[A]bandonment" means that:

(i)     For a period of four (4) consecutive months immediately preceding the filing of a . . . petition . . . to terminate the parental rights of the parent or parents . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents . . . either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child; [or]

.      .      .

(iv)    [T]he parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has failed to visit or has failed to support or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration . . . .

*Id*. § 102(1)(A) (2018).

The petition to terminate parental rights was filed on July 23, 2018. Because Mother was incarcerated during a portion of the four-month period immediately preceding the filing of the petition, the parties and the trial court agreed that the relevant four-month period was controlled by § 36-1-102(1)(A)(iv) rather than § 36-1-102(1)(A)(i) and the case was tried on that basis.

It is undisputed that the relevant four-month period is from March 1, 2018, through July 1, 2018, and Mother admits that she did not visit with Zoey at any time during the relevant period; nevertheless, Mother asserts the affirmative defense that her failure to visit was not willful because Petitioners always denied her visitation. *See* Tenn. Code Ann. § 36-1-102(1)(I) (providing that "[t]he absence of willfulness is an affirmative defense"). Because it is undisputed that Mother did not visit with Zoey during the relevant time period, the dispositive issue is whether or not Mother proved by a preponderance of the evidence that her failure to visit was not willful.

"Willfulness in the context of termination proceedings does not require the same

standard of culpability as is required by the penal code, nor does it require that the parent acted with malice or ill will." *In re Braxton M.*, 531 S.W.3d 708, 722 (Tenn. Ct. App. 2017) (citations omitted). "Rather, a parent's conduct must have been willful in the sense that it consisted of intentional or voluntary acts or failures to act, rather than accidental or inadvertent acts." *Id.* Because the petition to terminate Mother's rights was filed after July 1, 2018, Mother bears the burden to prove by a preponderance of the evidence that her failure to visit was not willful. *See* Tenn. Code Ann. § 36-1-102(1)(I) ("The parent . . . shall bear the burden of proof that the failure to visit . . . was not willful. Such defense must be established by a preponderance of evidence.").[3]

Mother testified that during the relevant period, she texted and called Natosha in an attempt to visit with Zoey. Mother said that she spoke with Natosha, who denied letting her speak to Zoey and said that it was best that Mother not see or speak to Zoey. Specifically, Mother testified:

Q.      Okay. March 1st, 2018 to July 1st, 2018[,] did you visit with Zoey?

A.      No.

Q.      Why did you not visit with Zoey?

A.      Because every time that I tried to make contact, she always denied visitation and didn't agree to let me see her.

Q.      All right. From March 1st of 2018 until July 1st of 2018[,] what attempts did you make to contact [Natosha] to have—set a visitation?

A.      Phone calls and text messages.

Q.      Did you actually ever get to speak with her?

A.      Yes.

Q.      And what reaction did she give you?

A.      It wasn't really the best reaction. It wasn't that long of a phone call either. It was just one of those things where I asked to see her or speak to her[,] and she denied it, said that she didn't think that it was best

_____

[3] Prior to July 1, 2018, petitioners bore the burden to prove a willful failure to visit, but the statute was amended to make the absence of willfulness an available affirmative defense for cases filed on or after that date. *See* 2018 Tenn. Pub. Acts, Ch. 875, § 2 (H.B. 1856).

that way. And that's when she told me that she was going to file for adoption.

Further, Mother claimed that she attempted to see Zoey when she was at Zoey's school, but that she was stopped by the principal and asked to leave the premises. However, she conceded that she had not attempted to visit Zoey at Petitioner's home since moving within walking distance. Specifically, Mother testified:

Q.      Okay. [Natosha's] testified there is no order suspending your visitation, correct?

A.      Uh-huh (affirmative).

Q.      And there's—is that a yes?

A.      Yes.

Q.      And there is no order setting up parameters for your visitation, is there?

A.      No.

Q.      I believe their petition says—states under oath that you have liberal visitation?

A.      Yes.

Q.      Do you live within walking distance [of] where she lives now?

A.      Yes.

Q.      Have you attempted to see the child since you were living there?

A.      No, because I—they've always denied visitation[,] to begin with[,] and I know that Natosha—on her property there's no trespassing and that they could call the law and ask me to be removed.

In contrast, Natosha testified that from March 1, 2018, through July 1, 2018, Mother did not visit with or attempt to communicate with Zoey. Specifically, Natosha testified:

Q.      Did—did [Mother] ask you, as she stated, to have scheduled visitations for her with Zoey in—within the past few months?

A.     No, sir.

Q.     Not between March 1st to July 1st of 2018 either, right?

A.     No, sir.

Natosha explained in her testimony that while she did not mind Mother spending time with Zoey, Mother had not requested to do so during the relevant four-month period. As to the lack of relationship with Mother, Natosha testified that in December of 2018, after filing the petition, Mother approached Zoey at a Christmas Parade and Zoey did not know who Mother was. Natosha commented on the instability of Mother's living arrangement at the time of trial, explaining that Mother was residing in a one-bedroom residence with Mother's uncle and his seven children. Due to the instability of Mother's living arrangements, Natosha testified that she would not recommend Zoey go there, even for visitation. It was Natosha's testimony that Zoey had settled into life with Petitioners and had received satisfactory marks in all of her first-grade classes and that she and her husband were working with Zoey regarding her Attention Deficit Hyperactivity Disorder and anger issues. Like Mother, Natosha testified that Petitioners have lived in the same house with the same phone number for nearly 20 years, and that Mother was living within walking distance of Petitioners during the relevant period, yet did not attempt to visit Zoey. Natosha opined that Zoey was doing well living as part of Petitioners' family, and it would be in Zoey's best interest for Mother's parental rights to be terminated.

The trial court found that during the relevant four-month period: Mother did not visit despite knowing where Zoey lived; Mother lived within walking distance of Petitioners' home; Mother did not call or otherwise attempt to communicate with Zoey despite having a phone number; and there was no legal impediment to Mother being able to exercise her right to visit with Zoey. Although Mother contends her efforts to visit were thwarted through no fault of her own, the court did not give much credibility to her testimony that she had attempted to arrange visitation during the relevant period. The trial court found that Petitioners established all the essential elements of the ground codified in Tenn. Code Ann. § 36-1-102(1)(A)(i) and that Mother did not establish by a preponderance of the evidence that her failure to visit had not been willful.

It being undisputed that Mother did not visit with Zoey at any time during the relevant period, and having concluded that the evidence does not preponderate against the trial court's finding that Mother's failure to visit Zoey during the relevant four-month period was willful, we affirm the trial court's determination that Petitioners established the ground of abandonment by failure to visit by clear and convincing evidence.

"In addition to presenting clear and convincing evidence establishing at least one statutory ground warranting the termination of a biological parent's parental rights," a petitioner must "present clear and convincing evidence that terminating the parent's rights

is in the best interests of the affected child." *In re Bernard T.*, 319 S.W.3d 586, 606 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c)(2); *In re Adoption of A.M.H.,* 215 S.W.3d at 809). Thus, having found that Petitioners established a ground for the termination of Mother's rights, we next consider whether the trial court made sufficient findings of fact and conclusions of law to clearly and convincingly establish that termination of Mother's parental rights is in Zoey's best interests.

## II. THE CHILD'S BEST INTERESTS

Mother contends that the Amended Final Judgment fails to include an analysis of the best interest factors and their application to the facts of this case, essentially the precise issue for which this case was previously remanded. *See In re Zoey L.*, 2020 WL 2950549, at *3. We disagree.

To enable appellate review in termination cases, the trial court must make "specific findings of fact and conclusions of law" when entering an order in a termination of parental rights proceeding. Tenn. Code Ann. § 36-1-113(k); *see also* Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."). Following remand, the trial court prepared and entered the Amended Final Judgment. The Amended Final Judgment includes a section entitled "Findings of Fact and Conclusions of Law." Paragraph 6 of the "Findings of Fact and Conclusions of Law" specifically addresses the best interest factors.

"The best interest analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d 240, 254 (Tenn. 2010). Clear and convincing evidence "establishes that that truth of the facts asserted is highly probable," "eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence," and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted).

While the combined weight of the evidence must meet the clear and convincing standard, facts considered in the best interest analysis need be proven only "by a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). "The child's best interests must be viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005) (citations omitted). "When the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child[.]" Tenn. Code Ann. § 36-1-101(d).

The best interest analysis does not consist of a rote examination of each factor followed by "a determination of whether the sum of the factors tips in favor of or against

the parent." *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004). Instead, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case." *Id.*

Tennessee Code Annotated § 36-1-113(i) lists nine factors that are to be considered in the analysis;[4] however, these "factors are illustrative, not exclusive," and the parties are free to offer proof of any other relevant factor to the analysis. *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017). The trial court set forth findings of fact regarding each of the nine factors in Tenn. Code Ann. § 36-1-113(i), and we review its findings below.

### (A) Adjustment of Circumstance

The first factor in Tenn. Code Ann. § 36-1-113(i) is "[w]hether the parent . . . has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian." *Id.* § 113(i)(1).

The testimony revealed that Mother lost custody of another child and has been unable to regain custody. Additionally, Mother testified that she had recently been incarcerated for failure to make child support payments and was released from jail shortly prior to the filing of this petition. She also admitted to being incarcerated from 2015 to 2017 for the sale of a schedule three narcotic. Mother presented no evidence of an ability to provide a stable income or stable housing. The trial court found that Mother had presented no proof that she had made the necessary adjustments to her circumstances, conduct, or conditions as to make it safe and in Zoey's best interest to be in Mother's home, and the evidence does not preponderate against this finding.

### (B) Lasting Adjustment

The second factor in Tenn. Code Ann. § 36-1-113(i) is "[w]hether the parent . . . has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible." *Id.* § 113(i)(2).

The trial court found that no social service agency had been involved and that this factor was not applicable to this case. We agree.

### (C) Regular Visitation or Contact

The third factor in Tenn. Code Ann. § 36-1-113(i) is "[w]hether the parent . . . has maintained regular visitation or other contact with the child." *Id.* § 113(i)(3).

---

[4] Tenn. Code Ann. § 36-1-113(i) has been amended and the best interest factors to be considered have been revised. *See* Act of April 22, 2021, ch. 190, § 1, 2021 Tenn. Pub. Acts ---- (to be codified as amended at Tenn. Code Ann. § 36-1-113(i)).

It is undisputed that Mother had no contact with Zoey during the applicable four-month period and very little in the prior years. Mother last recalled visiting with Zoey in 2015, which was years prior to the filing of the petition. Yet, Mother claims that Petitioners thwarted her attempts to visit Zoey, but these claims hold little credence. Mother had liberal visitation rights and chose not to exercise them. Based on this and other evidence, the trial court found that Mother had not maintained regular visitation with Zoey, and the evidence does not preponderate against this finding.

### (D) Meaningful Relationship

The fourth factor in Tenn. Code Ann. § 36-1-113(i) is "[w]hether a meaningful relationship has otherwise been established between the parent . . . and the child." *Id*. § 113(i)(4).

Zoey was seven at the time of trial, yet Mother has not had regular contact with Zoey since Zoey's second birthday. Since then, there have been so few interactions between Mother and Zoey that Zoey did not recognize Mother when she approached Zoey at the 2018 Christmas Parade. The court found that a meaningful relationship had not been established, and the evidence does not preponderate against this finding.

### (E) Change of Caretakers and Physical Environment

The fifth factor in Tenn. Code Ann. § 36-1-113(i) is "[t]he effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition." *Id*. § 113(i)(5).

Testimony at trial revealed that Petitioners are already helping Zoey navigate Attention Deficit Hyperactivity Disorder and anger issues. Natosha testified that she did not believe Zoey would be safe if she were placed with Mother and that being removed from Petitioners' custody would cause emotional distress and other issues to Zoey. Coupled with the fact that Zoey has virtually no relationship with Mother, placing her in Mother's custody would likely have a negative effect on Zoey's emotional, psychological, and medical condition. Even Mother stated that she believed placement with the Petitioners was in Zoey's best interest. The trial court found a change of caretakers and physical environment would be detrimental to Zoey's emotional and psychological condition, and the evidence does not preponderate against this finding.

### (F) Abusive Behavior

The sixth factor in Tenn. Code Ann. § 36-1-113(i) is "[w]hether the parent . . . , or other person residing with the parent . . . , has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family

- 11 -

or household." *Id*. § 113(i)(6).

The trial court found that there was no mention of any abuse by Mother. It concluded that it had not heard enough testimony or proof to find that Mother had previously shown brutality, physical, sexual or emotional abuse toward Zoey, and the evidence does not preponderate against the court's findings.

### (G) Physical Environment of Parent's Home

The seventh factor in Tenn. Code Ann. § 36-1-113(i) is "[w]hether the physical environment of the parent's . . . home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner[.]" *Id*. § 113(i)(7).

The trial court found there was insufficient proof regarding whether Mother's home was or was not healthy, safe, or free of illegal substances. Thus, the trial court held that this factor was not applicable to this case, and the evidence does not preponderate against the court's findings.

### (H) Parent's Mental and/or Emotional Status

The eighth factor in Tenn. Code Ann. § 36-1-113(i) is "[w]hether the parent's . . . mental and/or emotional status would be detrimental to the child or prevent the parent . . . from effectively providing safe and stable care and supervision for the child[.]" *Id*. § 113(i)(8).

The trial court found that Mother's emotional status would be detrimental to Zoey and would prevent Mother from effectively providing safe and stable care and supervision for the minor. Focusing on Mother's history of the lack of stable care and supervision for Zoey, the court noted: "based on the past performance of providing stable care and supervision for the child that would weigh in favor of termination because of the lack—let me make it clear for the record, because of the lack of stable care and supervision for the child by the birth mother." Thus, the court found that this factor weighed in favor of termination of Mother's parental rights, and the evidence does not preponderate against this finding.

### (I) Child Support

The ninth and final factor in Tenn. Code Ann. § 36-1-113(i) is "[w]hether the parent . . . has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101." *Id*. § 113(i)(9).

The trial court found that Mother had not paid child support for Zoey in accordance with guidelines and, with the exception of a very limited period of time and in token amounts, it is undisputed that Mother failed to pay or provide support for Zoey's benefit. Accordingly, the evidence does not preponderate against this finding.

Having considered the evidence related to the relevant factors, and considering the unique facts of this case, *see White*, 171 S.W.3d at 194, we conclude that the trial court sufficiently analyzed the applicable best interest factors. We also conclude that the evidence eliminates any serious or substantial doubt as to whether termination of Mother's parental rights is in Zoey's best interest. *See In re Bernard T.*, 319 S.W.3d at 596. Accordingly, we affirm the trial court's conclusion that Petitioners proved by clear and convincing evidence that termination of Mother's parental rights is in Zoey's best interest.

For the foregoing reasons, we affirm the trial court's decision to terminate Mother's parental rights.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Chelsea H.

_____
FRANK G. CLEMENT, JR., JUDGE